UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Civil No. 11-3306(DSD/TNL)

David Gregor,

    Plaintiff,

v.                                                     **ORDER**

Polar Semiconductor, Inc.,
a Minnesota corporation,

    Defendant.

    Lance R. Heisler, Esq. and Lampe Law Group, LLP, 105 East Fifth Street, Northfield, MN 55057, counsel for plaintiff.

    David A. Davenport, Esq., Derek R. Allen, Esq. and Winthrop & Weinstine, PA, 225 South Sixth Street, Suite 3500, Minneapolis, MN 55401, counsel for defendant.

This matter is before the court upon the motion for summary judgment by defendant Polar Semiconductor, Inc. (Polar). Based upon a review of the file, record and proceedings herein, and for the following reasons, the motion is granted in part.

**BACKGROUND**

This employment dispute arises out of the termination of plaintiff David Gregor by Polar. Gregor began working at Polar as a maintenance technician in March 2003. Gregor Dep. 25:20-26:3. Gregor's primary job duties included the repair and preventative maintenance of machinery used to manufacture semiconductors. Gregor Aff. Ex. 1, at 000008. As a maintenance technician, Gregor

used tools "that require[d] turning, twisting and manipulating." Id. Gregor also performed duties outside of his official job description, including procuring equipment, evaluating assemblies and parts for equipment, auditing inventory and writing maintenance specifications. Id. ¶ 4.

On December 24, 2009, Gregor suffered a non-work related injury, resulting in the partial loss of the index and middle fingers on his dominant right hand. Gregor Dep. 41:11-43:5. The injury required multiple surgeries and prevented Gregor from working. Id. at 43:6-22; 52:17-53:5. In response, Polar placed Gregor on short-term disability leave. Roberts Dep. 55:2-5.

Polar typically provides Family and Medical Leave Act (FMLA) leave for up to twelve weeks, but extended Gregor's leave when he was unable to return to work in March 2010. Gregor Dep. 53:24-54:19. On June 4, 2010, Gregor submitted a report of workability indicating that he would be unable to work until at least July 1, 2010. Gregor Aff. Ex. 3. Thereafter, on June 30, 2010, Deborah Roberts, a Polar human resources manager, informed Gregor that he had been administratively terminated effective June 24, 2010. Gregor Aff. ¶ 10. During that conversation, Gregor requested to return to work at Polar in a position other than maintenance technician, and Roberts explained that "we don't really do that, we have long term disability." Id. ¶ 12. Roberts explained that the decision was in accordance with Polar protocol, whereby employees

are terminated after their short-term disability concludes.  Id. ¶ 13.

On July 9, 2010, Gregor was cleared to return to work, but was instructed to avoid "pinch[ing] and fine manipulation" and "vibrating tools." Id. Ex. 4.  Moreover, Gregor was advised not to perform torquing, crimping or any firm grasping with his right hand.  Id.  To date, Gregor still does not have the ability to pinch between his thumb and index or middle fingers.  Gregor Dep. 57:4-7.

In a letter dated July 22, 2010, Gregor acknowledged that he was "physically unable" to return to his former position, but requested an "accommodation from Polar ... [and] to return to work in the position of Equipment Manager, or similar position for which [he was] qualified." Gregor Ex. 5.  Roberts responded on July 27, 2010, explaining that Gregor did not qualify for any open managerial positions.  Id. Ex. 6.  Roberts encouraged Gregor to check a publicly-accessible website for posted positions.  Id. Gregor never applied for an open position at Polar.  Id. ¶ 17.

On November 9, 2011, Gregor filed suit, alleging violations of the Americans with Disabilities Act (ADA) and FMLA[1] and wrongful termination.  Polar moves for summary judgment.

---

[1] At oral argument, Gregor abandoned his FMLA claim.

3

## DISCUSSION

### I. Standard of Review

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). A fact is material only when its resolution affects the outcome of the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party. See id. at 252.

On a motion for summary judgment, the court views all evidence and inferences in a light most favorable to the nonmoving party. See id. at 255. The nonmoving party, however, may not rest upon mere denials or allegations in the pleadings but must set forth specific facts sufficient to raise a genuine issue for trial. See Celotex, 477 U.S. at 324. A party asserting that a genuine dispute exists — or cannot exist — about a material fact must cite "particular parts of materials in the record." Fed. R. Civ. P. 56(c)(1)(A). If a plaintiff cannot support each essential element of a claim, the court must grant summary judgment because a complete failure of proof regarding an essential element necessarily renders all other facts immaterial. Celotex, 477 U.S. at 322-23.

**II. ADA**

The ADA prohibits discrimination by an employer "against a qualified individual on the basis of disability." 42 U.S.C. § 12112(a). "To obtain relief under the ADA, [a plaintiff] must show that he (1) has a disability within the meaning of the ADA, (2) is a qualified individual under the ADA, and (3) suffered an adverse employment action as a result of the disability."[2] Fenney v. Dakota, Minn. & E. R.R. Co., 327 F.3d 707, 711 (8th Cir. 2003) (citation and internal quotation marks omitted).

When, as here, plaintiff raises a failure-to-accommodate claim and presents no evidence of direct discrimination, the court applies a modified burden-shifting analysis. Id. at 712. "Under the modified burden-shifting approach, the employee must first make a facial showing that he has an ADA disability and that he has suffered [an] adverse employment action. Then he must make a facial showing that he is a qualified individual." Brannon v. Luco Mop Co., 521 F.3d 843, 848 (8th Cir. 2008) (citation and internal quotation marks omitted) (alteration in original). "The employee at all times retains the burden of persuading the trier of fact that he has been the victim of illegal discrimination due to his disability." Benson v. Nw. Airlines, Inc., 62 F.3d 1108, 1112 (8th Cir. 1995) (citations omitted).

---

[2] The parties do not dispute that the termination of Gregor on June 24, 2010, constitutes an adverse employment action under the ADA.

5

**A. Disability**

The ADA defines disability as "a physical or mental impairment that substantially limits one or more major life activities." 42 U.S.C. § 12102(1)(A). "[M]ajor life activities include, but are not limited to, caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." Id. § 12102(2)(A). Polar argues that Gregor is not disabled. In response, Gregor states that he is disabled in the major life activities of performing manual tasks and working.[3]

The ADA Amendments Act of 2008 (ADAAA) became effective on January 1, 2009. See Pub. L. No. 110-325, § 8, 122 Stat. 3559.[4] Under the ADAAA, "[t]he definition of disability ... shall be construed in favor of broad coverage of individuals ..., to the maximum extent permitted by the terms of this chapter." 42 U.S.C. § 12102(4)(A) (citation omitted). Without defining "substantially limits," the ADAAA states that the term shall be interpreted consistently with the findings and purposes of the [Act]. Id.

---

[3] Construing the facts in a light most favorable to plaintiff, the court finds that a material fact dispute exists as to whether Gregor is disabled in the major life activity of performing manual tasks. As a result, the court need not determine whether Gregor is disabled in the major life activity of working.

[4] Gregor was terminated on July 24, 2010, and the court applies the ADAAA.

§ 12102(4)(B). In turn, the ADAAA specifically

> reject[s] the standards enunciated by the Supreme Court in Toyota Motor Manufacturing, Kentucky, Inc. v. Williams, 534 U.S. 184 (2002) ..., [whereby] to be substantially limited in performing a major life activity under the ADA an individual must have an impairment that prevents or severely restricts the individual from doing activities that are of central importance to most people's daily lives.

ADAAA, § 2(b)(4) (citation and internal quotation marks omitted).

In the present action, Gregor presents evidence that he is unable to pinch between his thumb and index or middle fingers. Gregor Dep. 57:4-9. Moreover, Gregor has diminished grip strength, an inability to make torquing or crimping movements and a restriction against using vibrating tools or carrying heavy objects. Id. at 77:7-78:10. Construing this evidence in a light most favorable to Gregor, the court concludes that a reasonable juror could find that Gregor is substantially limited in the major life activity of performing manual tasks.

Such a conclusion is buttressed by the regulations promulgated by the Equal Employment Opportunity Commission (EEOC) in 2011.[5] In

---

[5] Gregor was terminated prior to enactment of the amended EEOC regulations, which took effect on May 24, 2011. See Allen v. SouthCrest Hosp., 455 F. App'x 827, 835 (10th Cir. 2011) (unpublished). In Allen, the Tenth Circuit concluded that "[t]he ADAAA did not ... explicitly discuss or modify the definition of the major life activity of working," and applied the 2010 regulations, rather than retroactively apply the amended EEOC regulations. Id. at 834. In the present matter, the 2010 EEOC regulations did not provide interpretive guidance regarding the
(continued...)

7

the ADAAA, Congress directed the EEOC "to issue regulations implementing the definitions of disability in section 12102." 42 U.S.C. § 12205a. These regulations explain that "substantially limits" is not meant to be a demanding standard. 29 C.F.R. 1630.2(j)(1)(i). An impairment is a disability when "it substantially limits the ability of an individual to perform a major life activity as compared to most people in the general population,... [and the] impairment need not prevent, or significantly or severely restrict, the individual from performing a major life activity in order to be considered substantially limiting." Id. § 1630.2(j)(1)(ii). The EEOC explains

> that the major life activity of performing manual tasks (which was at issue in Toyota) could have many different manifestations, such as performing tasks involving fine motor coordination, or performing tasks involving *grasping, hand strength, or pressure*. Such tasks need not constitute activities of central importance to most people's daily lives, nor must an individual show that he or she is substantially limited in performing all manual tasks.

Id. Pt. 1630, app. (emphasis added). These regulations, promulgated pursuant to the ADAAA, reinforce the court's conclusion

---

[5](...continued)
major life activity of performing manual tasks. As a result, Allen is distinguishable, and the court finds that the amended EEOC regulations are persuasive indicia of Congress's intent when promulgating the ADAAA.

that a fact issue exists as to whether Gregor is disabled for purposes of the ADA. Therefore, the court examines whether Gregor is a qualified individual under the ADA.

**B.    Qualified Individual**

"To be a qualified individual under the ADA, an employee must (1) possess the requisite skill, education, experience, and training for [his] position; and (2) be able to perform the essential job functions, with or without reasonable accommodation." <u>Kallail v. Alliant Energy Corporate Servs., Inc.</u>, 691 F.3d 925, 930 (8th Cir. 2012) (citation and internal quotation marks omitted). Neither party disputes that Gregor possessed the requisite skill and experience necessary for the maintenance technician position. <u>See</u> Gregor Aff. Ex. 2. As already explained, however, Gregor's limitations preclude him from performing the essential functions of the job without an accommodation. Gregor Dep. 77:7-78:10. As a result, the court examines whether a reasonable accommodation existed.

"In cases where the employee claims that he is able to perform the essential functions of the job with a reasonable accommodation, the employee must only make a facial showing that a reasonable accommodation is possible." <u>Brannon v. Luco Mop Co.</u>, 521 F.3d 843, 848 (8th Cir. 2008) (citations and internal quotation marks omitted). Reasonable accommodations include "job restructuring, part-time or modified work schedules, reassignment to a vacant

9

position, acquisition or modification of equipment or devices, appropriate adjustment or modifications of examinations, training materials or policies, the provision of qualified readers or interpreters, and other similar accommodations for individuals with disabilities." 42 U.S.C. § 12111(9)(B). If an employee satisfies the facial showing, the burden "shifts to the employer to show that it is unable to accommodate the employee." Fenney v. Dakota, Minn. & E. R.R. Co., 327 F.3d 707, 712 (8th Cir. 2003) (citations and internal quotation marks omitted). Whether a reasonable accommodation exists is often a fact question to be decided by the jury. See EEOC v. Convergys Customer Mgmt. Grp., Inc., 491 F.3d 790, 796 (8th Cir. 2007).

An employer must "mak[e] reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an ... employee, unless [the employer] can demonstrate that the accommodation would impose an undue hardship on the operation of the business of [the employer]." 42 U.S.C. § 12112(b)(5)(A). "To determine the appropriate reasonable accommodation it may be necessary for the [employer] to initiate an informal, interactive process with the [employee] with a disability in need of the accommodation.[6] This process should

---

[6] It is unclear whether Gregor requested a formal accommodation prior to termination. Polar does not argue that Gregor failed to do so, and Roberts states that she "spoke with Gregor about ... [Polar's] ability to accommodate [his] defined
(continued...)

identify the precise limitations resulting from the disability and potential reasonable accommodations that could overcome those limitations." 29 C.F.R. § 1630.2(o)(3). "[T]he failure of an employer to engage in an interactive process to determine whether reasonable accommodations are possible is prima facie evidence that the employer may be acting in bad faith." Fjellestad v. Pizza Hut of Am., Inc., 188 F.3d 944, 950 (8th Cir. 1999). Polar argues that it satisfied its obligations by (1) extending short-term disability leave and (2) attempting to reassign Gregor to an open position.

Polar first argues that it accommodated Gregor by extending his short-term disability leave beyond the twelve weeks required by the FMLA. "[A]llowing a medical leave of absence might, in some circumstances, be a reasonable accommodation." Brannon, 521 F.3d at 849 (citation omitted). Here, however, Polar retroactively terminated Gregor once his short-term disability benefits lapsed. See Heisler Decl. Ex. B, at 2 (explaining Polar policy that results in "termination of employment" when employee is unable to return to work after short-term disability lapses). Moreover, Gregor's termination predates discussions with Polar regarding accommodation or reassignment.[7] See Gregor Aff. ¶¶ 10-11; Id. Ex. 3 (report of

---

[6](...continued)
physical limitations" on or near June 30, 2010. Heisler Decl. Ex B, at 1.

[7] This is particularly troubling considering that on June 24, 2010, Polar allegedly "received a work ability form from [Gregor's]
(continued...)

11

workability).  As a result, a reasonable jury could conclude that Polar failed to engage in the interactive process and did not offer Gregor a reasonable accommodation.

Polar next argues that it engaged in the interactive process by attempting to reassign Gregor to a vacant position. "[R]eassignment to a vacant position" is a possible accommodation under the ADA.  42 U.S.C. § 12111(9)(B).  Polar, however, did not engage in any discussion regarding reassignment until after it terminated Gregor.  See Heisler Decl. Ex. B; Gregor Aff. Exs. 5-6. As a result, the court cannot conclude that Polar engaged in the interactive process by attempting to reassign Gregor to a vacant position.[8]

Of course, "an employer will not be held liable under the ADA for failing to engage in an interactive process if no reasonable accommodation was possible."  See Fjellestad, 188 F.3d at 952. Here, Polar argues that "[h]ad there been an opening that [Gregor] had an interest in and he was qualified for, we would have pursued an interactive discussion with him.  We would have automatically

---

[7](...continued)
doctor stating that he could return to work but that he could not do any pinching with his right hand for 6-8 weeks."  See Heisler Decl. Ex. B, at 3.  The court notes, however, that the June 24, 2010, doctor's report is not in the record.

[8] This is especially true considering that upon termination, Gregor lost access to Polar's intranet, where the company posts positions that are available exclusively to current Polar employees.  Gregor Aff. ¶ 17.

12

given it to him." Roberts Dep. 95:23-96:2. Gregor notes, however, that when he was terminated, two positions – Process Engineering Manager and Chemical Sustaining Operator - were open. See Roberts Dep. 86:4-23; see also Heisler Decl. Ex B, at 2 (email outlining three available positions: Chemical Sustaining Operations, Process Engineering Manager, Split Shift C/D). It is unclear whether Gregor was qualified for the position as a Process Engineering Manager. See Gregor Aff. Ex. 6 (explaining that position requires bachelor degree in electrical engineering and "two years' experience working for Japanese auto firms"). Gregor claims, however, that he was qualified and could perform the essential functions of the chemical sustaining position with "little or no accommodation." Id. ¶ 24. Polar, meanwhile, presents no evidence to the contrary.[9] See Cravens v. Blue Cross & Blue Shield of Kan. City, 214 F.3d 1011, 1020 (8th Cir. 2000) ("[S]worn statements that she met position requirements, her submission of relevant job postings, as well as her apparently competent performance ... create[d] a fact question as to whether she was qualified for any of the identified positions ... and whether reassigning her to one of these positions would be a reasonable accommodation." (citations

---

[9] Instead, Polar argues that Gregor was uninterested in the position. Roberts Dep. 47:9. Gregor, however, need only show that an accommodation was possible. Brannon, 521 F.3d at 848. Moreover, Polar did not learn of Gregor's alleged disinterest until after the effective date of his termination. See Roberts Dep. 46:15-20 (noting conversation with Gregor occurred on approximately June 25, 2010).

omitted)). As a result, viewing the evidence in a light most favorable to Gregor, the court cannot conclude that reassignment was impossible. Therefore, a material fact dispute exists as to whether Gregor is a qualified individual under the ADA, and summary judgment is not warranted.

**III. Wrongful Termination**

Gregor bases his wrongful termination claim on a violation of the Minnesota Human Rights Act (MHRA). See Compl. ¶¶ 6-7. "Apart from one difference, which is not relevant here, an MHRA claim proceeds the same way as does a claim under the ADA." Rask v. Fresenius Med. Care N. Am., 509 F.3d 466, 469 (8th Cir. 2007) (citation omitted). Therefore, summary judgment as to the MHRA claim is not warranted.

**CONCLUSION**

Accordingly, based on the above, **IT IS HEREBY ORDERED** that defendant's motion for summary judgment [ECF No. 9] is granted in part, consistent with this order:

1. The motion is denied as to plaintiff's claims for violation of the ADA and wrongful termination; and

2. The motion is granted as to plaintiff's claim for violation of the FMLA.

Dated: February 13, 2013

                                                                           s/David S. Doty
                                                                           David S. Doty, Judge
                                                                           United States District Court